**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x

**UNITED STATES OF AMERICA**

**v.**

**FREDDIE GONZALEZ,**
**a/k/a "Jose Frias-Burgos,"**
**a/k/a "Sixto Martinez,"**
**a/k/a "Tony El Turbo,"**

**Defendant.**

---------------------------------------------------x

**MEMORANDUM OPINION AND ORDER**
**S1 08 Cr. 684 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/3/12

Freddie Gonzalez is charged with four counts of intentional murder, all of which were allegedly related to his cocaine distribution business, which ran from the mid-1980s until 1995. The murders all occurred in 1990. The Government has filed two pretrial motions: (1) Motion to Introduce Certain Evidence; and (2) Motions *in Limine*. The Government's motions are granted in part and denied in part.

### A. Motion to Introduce Certain Evidence

The Government seeks permission to offer thirteen separate items of evidence that it has summarized in the following four categories:

(1) Gonzalez's presence at and maintenance of a "drug spot" in a building at 250 East 176th Street in the Bronx, New York,

1995, including Gonzalez's possession of firearms at and near that "drug spot";

(2) robberies, attempted robberies, a burglary, a kidnaping, and attempted murders committed by Gonzalez and his co-conspirators that were a part fo the course of conduct giving rise to the four charged homicides;

(3) a murder that Gonzalez discussed in his statement to law enforcement officers, which Gonzalez explained was committed by two of his co-conspirators; and

(4) arrests of Gonzalez with one or more of his co-conspirators, firearms, drugs, bullet-proof vests, and other tools of Gonzalez's trade.[1]

The Government argues that this evidence is admissible because it constitutes direct proof of the charges in the Indictment; is evidence of a prior and subsequent course of dealing between Gonzalez and his co-conspirators; demonstrates the relationship of trust between Gonzalez and others believed to have participated in the murders; and is background to, part of, and inextricably intertwined with Gonzalez's participation in the charged murders. Alternatively, the government argues that the evidence is admissible pursuant to Rule 404(b) to show Gonzalez's knowledge, intent, motive, opportunity, identity, and lack of mistake or accident. The Government argues that the evidence

---

[1] Government's Memorandum of Law in Support of Its Motion to Introduce Certain Evidence at 1 ("Gov't Mem.").

constitutes *Giglio* material related to cooperating witnesses. Finally, the Government argues that the evidence should be admitted to corroborate the defendant's confession to the murders and to rebut any suggestion that the confessions were not given freely and voluntarily.[2]

The defendant opposes the admission of most of this evidence, except where noted, on various grounds. These grounds include: that the evidence is cumulative, that the evidence does not relate to any disputed issue of fact, that the prejudice of some of the evidence outweighs any probative value, and that admission may result in mini-trials relating to events taking place many years ago.[3]

Upon full consideration of the memoranda of law submitted by the parties, the Court makes the following rulings with respect to each proposed item of evidence:

(1) 6/28/89 Arrest of Gonzalez. Not admissible. The defense will stipulate that Gonzalez lived at 250 East 176th Street in June of 1989. The Government has agreed that this is sufficient and no longer

---

[2] *See id.* at 2.

[3] *See generally* Memorandum in Response to Government's Motion to Admit Evidence of Uncharged Criminal Conduct ("Def. Mem.").

seeks to admit this arrest.[4]

(2) 1/30/90 First shooting of Carmelo Gonzalez. Not admissible. Cumulative. Defendant's confession describes the prior attempted murder of Carmelo Gonzalez including the participation of Hugo and Eddie Chapulin; there will be evidence of the turf war between Freddie Gonzalez and Carmelo Gonzalez, apart from the attempted murder, and the medical examiner will testify to the autopsy of Carmelo Gonzalez in which a bullet was found that had been in the body for long time and was not the cause of his death.

(3) 2/1/90 Arrest of Gonzalez; seizure of two ounces of cocaine, one thousand dollars in cash, and a loaded .45 caliber gun; and a statement by Gonzalez that he needed to carry the gun and wear a bullet proof vest because someone was trying to kill him. Admissible. Supplies direct evidence of the conspiracy that resulted in the alleged murders.

(4) 3/28/90 Arrests of Gonzalez with Hugo and Belkys dressed as police officers and seizure of guns, handcuffs, a badge and caps, and bullet-proof vests. Inadmissible. Cumulative. There will be

---

[4] *See* Government's Reply Memorandum - Motions to Introduce Certain Evidence and Motions *in Limine* at 6 ("Gov't Reply Mem.").

sufficient evidence of the relationship between Gonzalez, Hugo and Belkys. It is also noteworthy that the defendant does not intend to contest that he was associated with these individuals and that he had ongoing criminal relationships and relationships of trust with these individuals.[5] As noted with respect to the 2/1/90 arrest, there is also evidence of Gonzalez's possession of drugs, weapons, and a bullet-proof vest.

(5) 6/2/90 Murder of Rolando Nunez. Admissible in part. Gonzalez addressed this murder in his confession and identified the murderers. His statement is admissible as part of his confession as it gives a complete picture of the police interrogation and the responses. However, no extrinsic evidence regarding this murder is permitted (such as ballistics evidence or police testimony). Such evidence is cumulative and to some extent speculative.

(6) 9/25/90 Kidnaping of Bedword and burglary of his apartment. Admissible. This evidence directly relates to the charged murder of Bedword.

(7) 10/30/90 Attempted murder of Henry Perez. Admissible.

---

[5] *See* Def. Mem. at 5.

The evidence regarding this attempted murder is admissible for several reasons: it is proof of the narcotics conspiracy; it demonstrates the *modus operandi* of Gonzalez and his co-conspirators because this attempted murder employed the same personnel, utilized the same weapon, and occurred within a very short time frame of two of the charged murders; and it is *Giglio* material with respect to a cooperating witness, who will testify that s/he engaged in this criminal conduct. The probative value of this testimony outweighs the prejudice resulting from proof of a murder attempt in a case involving four charged murders.

(8) 12/15/90 Arrest of Gonzalez in Rhode Island and the seizure of a fully automatic .45 caliber machine gun with a silencer, a 9 millimeter gun, as well as magazines and bullets, some of which had blue tips. Admissible. The items seized constitute direct proof – albeit based on circumstantial evidence – of the crimes charged in the Indictment.

(9) Other attempted robberies by Freddie Gonzalez and two cooperating witnesses. Admissible only to the extent this represents *Giglio* material with respect to a testifying cooperating witness. If the defense agrees that no cooperating witness will be questioned with respect to other robberies, then this evidence is not independently

admissible based on the cumulative nature of the testimony.

(10) Drug dealing by Gonzalez at 250 East 176th Street and Gonzalez's possession of weapons at that location. Admissible as proof of an element of each of the charged murders.

(11) Marijuana usage by Freddie Gonzalez with a cooperating witness. Admissible as *Giglio* material, unless the defense agrees that it will not question the cooperating witness with respect to his/her prior drug use.

(12) 6/12/95 arrest of Gonzalez for criminal possession of a weapon. Admissible as direct evidence of the drug conspiracy and its location and duration, which is an element of each of the charged murders.

(13) The fact that Gonzalez was incarcerated at FCI McRae at the time of his confession. Admissible to provide background and context to the confessions. The Government has agreed that it will not illicit the nature of the crime for which defendant was incarcerated.[6]

**B. Motions *in Limine***

The Government moves *in limine* to admit one item of

---

6 *See* Gov't Mem. at 24.

evidence and to preclude the admission of three other items of evidence.[7] Once again, these motions are granted in part and denied in part.

(1) Statements that Carmelo Gonzalez, the victim in one of the charged murders, made to his brother regarding his drug operation and drug war with the defendant Freddie Gonzalez. As the defense notes in its responding brief, the Court does not have detailed information as to the precise statements to be offered, the context in which they were made, the dates of any such statements, or who was present at the time of the statements.[8] Nonetheless, based on the information provided by both sides, and subject to re-argument at trial, certain of the statements are admissible while others are not.

The statements of Carmelo Gonzalez that he was concerned that another drug dealer at 250 East 176th street was preventing him from moving into that building, that he was a drug dealer, and that he planned to engage in acts of violence as a part of a drug war, and in fact intended to retaliate against someone whom he believed was trying to kill him, are

---

[7] *See generally* Government's Motions *in Limine* ("Gov't *in Limine* Mem.").

[8] *See generally* Memorandum in Response to Government's Motions *in Limine.*

admissible, pursuant to Rule 803(3) as statements of his then existing state of mind, and pursuant to Rule 804(b)(3), as statements against his penal interest.[9] However, his statement of belief that someone from the Drug Spot (possibly Freddie Gonzalez) with whom he was fighting over drug selling territory ***had*** tried to kill him is not admissible. This is an inadmissible statement of belief and is not self-inculpatory.

(2) Evidence that Carmelo Gonzalez's brother engaged in certain bad acts. The Government agrees that evidence of the brother's bad acts that pre-date the murder of Carmelo are admissible.[10] However, his 1991 convictions for armed robbery, for which he was incarcerated until 1994, are not admissible. Rule 609(b) provides that convictions that are more than ten years old (from the date of conviction or release, whichever is later) are presumptively not admissible. These convictions are now eighteen years old. Robbery does not generally relate to the truth telling. Finally, these convictions do not relate to robberies that involved either Carmelo Gonzalez or Freddie Gonzalez.

(3) Statements by the three-year old son of Carmelo Gonzalez.

---

9 *See id.* at 4.

10 *See* Gov't Reply Mem. at 18.

Inadmissible. The three- year old son of Carmelo Gonzalez was questioned by the police when they arrived at his apartment, where his parents had just been murdered. According to the police report, the boy told a police officer that his mother had been fighting with his uncle. The police officer and the boy then watched television for 10 to 15 minutes, and when asked again what happened, the boy said that his uncle killed his father.[11] Gonzalez seeks to admit these statements for their truth under the present sense impression and excited utterance exceptions to the hearsay rule.[12] Because of the scant contextual information available, neither statement is admissible. There is no evidence to suggest that the boy witnessed his parents' murders – indeed, according to the Government, the police concluded that "the interviewing officer was unduly and improperly suggestive in his questioning, and *the Son was asleep in the same room with the Brother when the shooting started, and so the Son did not have an opportunity to see the shooting.*"[13] Similarly, there is no way to determine whether the son actually observed his

---

[11] *See* Gov't Reply Mem. at 17 (quoting the police officer's report).

[12] Def. *in Limine* Mem. at 9-10.

[13] Gov't *in Limine* Mem. at 17 (emphasis added) .

mother fighting with his uncle. While there is no evidence that he was asleep at the time, I cannot determine when the fighting occurred and whether the son observed it.[14] Because the son's hearsay statements bear no indicia of either reliability or trustworthiness, they are inadmissible.

(4) Because I will not permit the Government to introduce evidence regarding Gonzalez's March 28, 1990 arrest, the credibility of arresting Police Officer Rodriguez is irrelevant.

If I were to admit testimony regarding the arrest, I would not admit evidence regarding an adverse credibility ruling made by a former judge, in an unrelated case years ago, with respect Rodriguez's testimony. While it is true that a judge of this Court found that Rodriguez's testimony could not have been true, and also found that other judges in the state courts had found this officer's testimony not credible, it is also the case that several judges credited his testimony in other matters in subsequent years. Proof of the adverse credibility rulings will simply lead to confusion. The testimony that the officer would give in this case relates solely to the facts of an uncontested arrest – that the

[14] If the defendant is able to offer evidence from the police records or any other source that the son actually observed fighting between his mother and his uncle during the day or evening when his parents were killed, I would reconsider the ruling as to this statement.

arrest took place and the items seized during the arrest. Such events are not akin to the issues raised in the suppression context – which often involve an officer's testimony as to what he observed prior to the arrest in order to establish probably cause for the arrest, or an officer's testimony regarding the demeanor of a defendant when he made inculpatory statements. There is no question here as to the grounds for the arrest. The officer would merely testify as to the fact of the arrests and the seizures – which are by and large uncontested. Moreover, as noted, several judges credited this officer's testimony subsequent to the findings of the other judges. The prejudice of this testimony would outweigh any probative value.

**CONCLUSION**

For the reasons stated above, the Government's Motion to Introduce Certain Evidence and the Government's Motions *in Limine* are granted in part and denied in part. The Clerk of the Court is directed to close these motions [Docket Nos. 52 and 53].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
January 3, 2012

## Appearances

**For the Government:**

Laurie Korenbaum
Jessica R. Lonergan
Michael D. Maimin
Assistant United States Attorneys
One St. Andrews Plaza
New York, New York 10007
(212) 637-2266/1038/2238

**For Defendant Freddie Gonzalez:**

David S. Greenfield, Esq.
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 481-9350

Jeremy Schneider, Esq.
Lucas Anderson, Esq.
Rothman, Schneider, Soloway & Stern, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500