UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                                       :

FREDDIE GONZALEZ,                    :

                          Petitioner,   :

                                         :

             -v-                     :

                                       :

UNITED STATES OF AMERICA,       :

                                     :

                       Respondent. :

                                     :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __10/17/2018__

15-CV-8831 (VSB)
08-CR-684 (VSB)

**OPINION & ORDER**

Appearances:

Freddie Gonzalez
Lewisburg, Pennsylvania
*Pro Se Petitioner*

Michael Douglas Maimin
Jessica Rose Lonergan
Laurie Ann Korenbaum
U.S. Attorney's Office, SDNY
New York, New York
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

      Pro se Petitioner Freddie Gonzalez filed what appears to be an amended petition that

purports to relate back to his initial petition to vacate, set aside, or correct his sentence pursuant

to 28 U.S.C. § 2255, currently pending. I directed the Government to respond to Gonzalez's

filing to address whether "relation back" is appropriate here. Because Gonzalez's amended

petition does not in fact relate back to his original filings, it is untimely and I will not consider it.

However, Gonzalez's prior supplementary petition is entitled to equitable tolling.

    **I.**    **Background**

      On January 20, 2012, after a two-week jury trial before Judge Shira A. Scheindlin,

Gonzalez was convicted of four counts of intentional murder while engaged in a narcotics-

1

trafficking crime involving at least five kilograms of cocaine, in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2. On June 1, 2012, Judge Scheindlin sentenced Gonzalez to life imprisonment on each count, to run concurrently. (Crim. Doc. 71.) Gonzalez appealed his conviction and sentence. On August 21, 2014, the United States Court of Appeals for the Second Circuit issued an opinion affirming his conviction and sentence. *United States v. Gonzalez*, 764 F.3d 159 (2d Cir. 2014). The mandate issued on September 15, 2014. (Crim. Doc. 79.) The United States Supreme Court denied Gonzalez's petition for a writ of certiorari on November 10, 2014. *Gonzalez v. United States*, 135 S. Ct. 492 (2014).

On or about October 12, 2015, Gonzalez wrote two letters to Judge Scheindlin, requesting an extension of his November 10, 2015 deadline to file his petition pursuant to 28 U.S.C. § 2255 because the prison where he was housed was placed on "extensive lockdown" between July and September, and again beginning on October 8, during which time he was not allowed access to the prison law library. (Crim. Docs. 80, 81.)

On November 1, 2015, Gonzalez mailed his petition pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Initial § 2255 Petition"), which consisted of a form motion and brief in support. (Crim. Doc. 82.) On November 8, 2015, Gonzalez executed a "Sworn Affidavit of Evidential Facts," which was docketed on November 13, 2015. (Crim. Doc. 83.)

On November 24, 2015, Judge Scheindlin issued an order granting Gonzalez's request to file supplemental papers with additional grounds for relief within forty-five days from the date of that order, and providing that the Government would thereafter have forty-five days to respond. (Crim. Doc. 84.)

Presumably prior to seeing Judge Scheindlin's order, Gonzalez sent a follow-up letter

dated November 25, and docketed December 4, 2015, requesting an extension to amend his Initial § 2255 Petition. (Crim. Doc. 85.) In that letter, he said that his Initial § 2255 Petition "was not completely developed as regards all of the issues that [he] seeks to raise," and that the prison "ha[d] been the subject of multiple security-premised lockdowns that began on July 8, 2015 and . . . end[ed] on November 1, 2015." (*Id.*)

After receiving Judge Scheindlin's order, Gonzalez made another request for an extension on January 3, 2016, and docketed on January 11, 2016. (Civ. Doc. 9.) In this letter, Gonzalez asked how much time he had left to file his supplementary papers and asked for more time because the institution was again on lockdown. (*Id.*) On January 13, 2016, Gonzalez executed a "Supplemental Issue to Petitioner[']s § 2255 Additional Grounds," which was docketed January 21, 2016 ("Supplemental § 2255 Petition"). (Crim. Doc. 86.)

Pursuant to Judge Scheindlin's November 24 Order, the Government had until March 7, 2016 to respond. On February 25, 2016, the Government requested that Judge Scheindlin find that Gonzalez had waived his attorney client privilege and direct Gonzalez's trial counsel to file affidavits responding to the claims in Gonzalez's Initial § 2255 Petition. The Government also sought an extension of its time to respond given its request concerning Gonzalez's trial counsel. (Crim. Doc. 87.) Judge Scheindlin granted the Government's application, and ordered Gonzalez's counsel to submit affidavits within forty-five days, by April 11, 2016. (Crim. Docs. 88, 89.) The Government represented that, on April 13, 2016, it received an affidavit signed by and/or sworn to by Gonzalez's trial attorneys. (Crim. Doc. 90.) On April 28, 2016, this case was reassigned to me, and I issued on order informing the parties that "all deadlines and schedules ordered by Judge Scheindlin remain in effect, including those contained in Judge Scheindlin's February 25, 2016 Order." (Civ. Doc. 15.)

On June 20, 2016, Gonzalez submitted a document titled "Relation Back Amendment," which was filed on the docket on June 24, 2016. (Crim. Doc. 92.) I directed the Government to respond on or before July 8, 2016 regarding whether it believed relation back was appropriate under the circumstances. (Crim. Doc. 91.) On July 7, 2016, the Government filed its brief in response, arguing that (1) the "Relation Back Amendment" was untimely and does not relate back to Gonzalez's Initial § 2255 Petition and (2) the claims raised in Gonzalez's Supplemental § 2255 Petition were also untimely and did not relate back to his Initial § 2255 Petition. (Crim. Doc. 93.) The Government also requested, and I granted, leave to adjourn their deadline to submit a substantive response to Gonzalez's § 2255 petition until forty-five days after the resolution of the relation back issues. (Crim. Doc. 93; Crim. Dkt. Entry July 8, 2016.) Gonzalez filed two letters in response, on July 26 and August 2, 2016, respectively. (Crim. Docs. 94, 95.) He also filed a motion for discovery of certain information, a motion to amend his request for discovery, and a renewed motion to amend discovery and for an evidentiary hearing on November 3, 2016, January 26, 2017, and February 26, 2018. (Crim. Docs. 97, 98, 101.)

## II. **Discussion**

The Government argues that neither the Supplemental § 2255 Petition, nor the Relation Back Amendment, should be considered as part of Gonzalez's § 2255 petition. Because Gonzalez's Supplemental § 2255 Petition was filed (1) with Judge Scheindlin's permission after his Initial § 2255 Petition was timely filed, and (2) after he made timely requests for extensions of time on the ground that he lacked access to the prison law library for several months leading up to the deadline, I find that equitable tolling is appropriate. Therefore, the Supplemental § 2255 Petition will be considered part of Gonzalez's Initial § 2255 Petition. However, because the Relation Back Amendment does not contain claims that have a common core of operative

facts with the claims in Gonzalez's Initial § 2255 Petition it does not relate back, and is therefore untimely.

### A. *Applicable Law*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") mandates a one-year statute of limitations period for filing of a habeas petition by a person in custody. 28 U.S.C. § 2255(f). Where the United States Supreme Court has denied a petitioner's petition for a writ of certiorari, that one-year period begins when the Supreme Court denies the petition. *See Rosa v. United States*, 785 F.3d 856, 859 (2d Cir. 2015). The one-year filing deadline bars claims not raised in the original petition where an amended petition articulates new grounds for relief. *See Mayle v. Felix*, 545 U.S. 644, 657 (2005).

Petitions may only be amended if the new claims "relate back" to the original petition, meaning they "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "An amended habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650. "It is not sufficient for a claim to simply come from the same 'trial, conviction, or sentence.'" *Ozsusamlar v. United States*, Nos. 10-CV-6655 (KMW)(HBP), 02-CR-763 (KMW), 2013 WL 4623648, at *3 (S.D.N.Y. Aug. 29, 2013) (quoting *Mayle*, 545 U.S. at 662–64). "Rather, relation back is permitted only insofar 'as the original and amended petitions state claims that are tied to a common core of operative facts.'" *Id.* (quoting *Mayle*, 545 U.S. at 664).

"Extensions of Section 2255's limitations period are not granted as a matter of course; in order to warrant an extension of the one-year limitations period prescribed in Section 2255, a movant must show, among other things, circumstances that would justify an equitable toll."

*Pizzuti v. United States*, No. 10 Civ. 199(LAP)(HBP), 2014 WL 4636521, at \*19 (S.D.N.Y. Sept. 16, 2014) (citing *Green v. United States*, 260 F.3d 78, 82–83 (2d Cir. 2001)).  "[A] district court may grant an extension of time to file a motion pursuant to section 2255 only if (1) the moving party requests the extension upon or after filing an actual section 2255 motion, and (2) 'rare and exceptional' circumstances warrant equitably tolling the limitations period."  *Green*, 260 F.3d at 82–83.  Because a federal court "lacks jurisdiction to consider timeliness of a § 2255 petition until [it] is actually filed," *United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000), an extension may be granted only *after* an "actual [§] 2255" petition is filed, *Green*, 260 F.3d at 82–83.

Untimely claims may be deemed timely in "rare and exceptional circumstances," and only if the petitioner can show that "extraordinary circumstances" warrant equitable tolling. *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015) (internal quotation marks omitted); *see also Holland v. Florida*, 560 U.S. 631, 649 (2010).  "The petitioner must establish that (a) 'extraordinary circumstances' prevented him from filing a timely petition, and (b) he acted with 'reasonable diligence' during the period for which he now seeks tolling." *Martinez*, 806 F.3d at 31 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).  However, "[a]s the Supreme Court has long recognized, the 'exercise of a court's equity powers must be made on a case-by-case basis.'" *Dillon v. Conway*, 642 F.3d 358, 362 (2d Cir. 2011) (per curiam) (quoting *Holland*, 560 U.S. at 649–50).  "The 'flexibility' inherent in 'equitable procedure' is necessary 'to meet new situations that demand equitable intervention' with the understanding that a court of equity must 'exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Id.* (quoting *Holland*, 560 U.S. at 650); *see also Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003) ("Equitable relief such as

6

tolling may be 'awarded in the court's discretion only upon consideration of all the facts and circumstances.'" (quoting *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 965 (2d Cir. 1981))).

Equitable tolling is infrequently granted. *See Diaz v. United States*, Nos. 11 CV 2248(HB), 03 CR 187(HB), 2012 WL 2864526, at *2 (S.D.N.Y. July 12, 2012) (collecting cases). To satisfy the "reasonable diligence" prong, the petitioner must have "acted with reasonable diligence throughout the period he seeks to toll." *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007). It requires more than "a garden variety claim of excusable neglect," but does not demand "maximum feasible diligence." *Holland*, 560 U.S. at 651, 654 (internal quotation marks omitted). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). For example, "medical conditions, whether physical or psychiatric, can manifest extraordinary circumstances, depending on the facts presented." *Id.* Likewise, where prison officials confiscated a petitioner's legal papers, such a confiscation constitutes extraordinary circumstances as a matter of law. *See Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000). The extraordinary circumstances shown must also have caused petitioner to miss the original filing deadline. *See Harper*, 648 F.3d at 137. Causation is lacking where a petitioner has been "so neglectful in the preparation of his petition that even in the absence of the extraordinary circumstances, a reasonable person in the petitioner's situation would have been unable to file in the time remaining within the limitations period." *Id.* (quoting *Valverde*, 224 F.3d at 136).

In *Hizbullahankhamon v. Walker*, the Second Circuit suggested that where "the discretionary deprivation of a prisoner's access to his own legal materials and law library materials prevented a prisoner from petitioning for a writ of habeas corpus in federal court,"

equitable tolling may be required in certain circumstances "to avoid the constitutional difficulty posed by such a denial of access to the federal courts." 255 F.3d 65, 75 (2d Cir. 2001). Thus, while prison lockdowns and other restrictions from the law library "do not by themselves qualify as extraordinary circumstances," *Amante v. Walker*, 268 F. Supp. 2d 154, 158 (E.D.N.Y. 2003), they may qualify if they create a sufficiently severe obstacle "for the prisoner endeavoring to comply with AEDPA's limitations period," *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008).

**B.** *Application*

**1. The Supplemental § 2255 Petition**

The Government argues that Gonzalez is not entitled to equitable tolling to merit the extension granted by Judge Scheindlin, and that the period of lockdown—between July and September and again from October 12 to November 1—was merely an inconvenience attendant to prison life that does not rise to the level of "extraordinary circumstances." (Gov't Mem. 16–18.)[1] I disagree. As an initial matter, the Government appears to be requesting that I reconsider Judge Scheindlin's prior decision to grant Gonzalez extensions of time. I find that the Government has not met its burden for reconsideration. In any event, Judge Scheindlin already granted Gonzalez permission to file the Supplemental § 2255 Petition—albeit without elaborating on her reasons for doing so—and there is no reason for me to believe that she did not already consider the equities at issue. Nor did she grant the extension without jurisdiction, since Gonzalez's "actual § 2255 petition" had already been filed. *See Leon*, 203 F.3d at 163–64.

I also find that equitable tolling is warranted under the circumstances. Although the Government is correct that "the usual problems inherent in being incarcerated do not justify

---

[1] "Gov't Mem." refers to the Memorandum of Law of the United States of America Opposing Freddie Gonzalez's "Supplemental Issue to Petitioners § 2255" and "Relation Back Amendment" as Untimely, filed July 7, 2016. (Crim. Doc. 93.)

equitable tolling," *Baldayaque*, 338 F.3d at 145, whether circumstances are "extraordinary" is measured not by "uniqueness," but by "the severity of the obstacle impeding compliance with a limitations period," *Harper*, 648 F.3d at 137. A prison lockdown is by no means unique, but its imposition for an extended period of time late in the one year statutory period—here, approximately four of the five months prior to the filing deadline—presents an obstacle to the preparation of a § 2255 petition. Such obstacles may not create a significant impediment so as to excuse the filing of an initial petition altogether, but are compelling enough to excuse some incompleteness and deficiencies in an initial filing, and warrant allowing the filing of supplementary papers. *See Diaz*, 515 F.3d at 154 (concluding that prison lockdowns and other restrictions from the law library may, in certain circumstances, create a sufficiently severe obstacle for a prisoner endeavoring to comply with AEDPA).

Here, a month prior to the November 10 deadline, Gonzalez filed two requests for an extension describing his complete lack of access to the law library from July to September, and again beginning October 8. After not receiving a response from the court, Gonzalez filed his timely 79-page typewritten Initial § 2255 Petition, which raises twelve grounds for relief, and provides objective evidence that Gonzalez had been diligently working on his Petition in the months prior to the prison lockdown. After this filing, Gonzalez submitted another letter on November 25, requesting to amend his Initial § 2255 Petition because it "was not completely developed as regards all of the issues that [he] seeks to raise," and that the prison "ha[d] been the subject of multiple security-premised lockdowns that began on July 8, 2015 and . . . end[ed] on November 1, 2015." (Crim. Doc. 85.) These circumstances demonstrate Gonzalez's reasonable diligence in filing his Initial § 2255 Petition, and suggest that, but for the extensive lockdowns, Gonzalez's petition would have been complete. *See Belot*, 490 F.3d at 207 ("'A petitioner

9

should not be faulted for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period.'  We understand this to mean that the petitioner was not ineligible, as a matter of law, for equitable tolling because the petitioner waited until late in the limitations period." (emphasis omitted) (quoting *Valverde*, 224 F.3d at 136)).

I also find that equitable tolling is appropriate for the time between January 8, 2016 (45 days from the date of the order granting Gonzalez an extension) and January 13, 2016 (the date Gonzalez executed the Supplemental § 2255 Petition).  This short period should likewise be excused because the prison was again on lockdown, and because there appeared to be some confusion as to when exactly Gonzalez's supplementary submission was due; instead of specifying a date, the deadline was 45 days from the date of the order.  (*See* Civ. Doc. 9 ("I would like to ask, to this Honorable Court, how many days, I have lef[t] to submit the rest of the issues. Also, I want to let this Court know, that this institution is on lockdown again[.]  Please: respectfully, I want to ask to this Court if you[] can give me another extension of time[.]  Please: I need some time, to . . . finish my 2255.").)  Here again, Gonzalez exhibited due diligence by timely requesting an extension to "submit the remaining issues" on the basis of lack of access to the prison law library.  *See Nelson v. United States*, 380 F. Supp. 2d 100, 104 (N.D.N.Y. 2005) ("Because he filed within the period extended to him and submitted his motion for an extension before the original deadline expired, [Petitioner] exhibited reasonable diligence within the period of equitable tolling now under consideration.").

## 2.  The Relation Back Amendment

A comparison of the claims raised in the Relation Back Amendment with those contained in the Initial § 2255 Petition or the Supplemental § 2255 Petition demonstrates that the claims in

the Relation Back Amendment do not relate back to either of the earlier filings.

Gonzalez's Initial § 2255 Petition raises the following issues:

- The District Court and Second Circuit erred in improperly granting continuances in violation of the Speedy Trial Act and his Sixth Amendment right to a Speedy Trial, (Crim. Doc. 82, at 27–37);

- The evidence was insufficient to support a conviction under 21 U.S.C. § 848(e)(1)(A), (Crim. Doc. 82, at 37–45);

- The prosecution elicited perjured grand jury testimony, (Crim. Doc. 82, at 45; Crim. Doc. 82-1, at 1);

- The prosecution elicited perjured trial testimony, (Crim. Doc. 82-1, at 1–3);

- Gonzalez was prejudiced by being detained in the same bull pen as witnesses during the trial, (Crim. Doc. 82-1, at 3–4);

- Gonzalez's counsel failed to properly advise him of his right to testify at trial, (Crim. Doc. 82-1, at 5–11);

- Gonzalez's counsel failed to properly advise him of his right to testify at the suppression hearing, (Crim. Doc. 82-1, at 12–18);

- Gonzalez's counsel failed to adequately challenge the case against him, (Crim. Doc. 82-1, at 18–20);

- Gonzalez's conviction is in violation of the Due Process Clause because it is based on conflicting prosecution theories and inconsistent witness testimony, (Crim. Doc. 82-1, at 20–28);

- The District Court and Second Circuit lacked subject matter jurisdiction, (Crim. Doc. 82-1, at 28–34);

- The judges who presided over his case on the District Court and Second Circuit were not authorized by Article III, (Crim. Doc. 82-1, at 35–37); and

- Gonzalez's counsel's cumulative errors—namely the errors outlined in the points above—rendered him ineffective, (Crim. Doc. 82-1, at 37–44).

His Supplemental § 2255 Petition adds the following:

- Detective Braccini committed perjury before the grand jury, (Crim. Doc. 86, at 2–7);

- Gonzalez's counsel failed to hire an expert witness to cross-examine the prosecution's ballistics expert, (Crim. Doc 86, at 7–10);

- The prosecution failed to turn over *Brady* and 3500 material, (Crim. Doc. 86, at 10–14);

- Gonzalez's counsel failed to adequately cross-examine the prosecution's medical examiner witness, (Crim. Doc. 86, at 14–15);

- Gonzalez's counsel failed to adequately prepare for the cross-examination of Detective Fortune, (Crim. Doc. 86, at 15–19); and

- Gonzalez's counsel failed to show him 3500 material prior to trial, (Crim. Doc. 86, at 19–21).

In his Relation Back Amendment, Gonzalez appears to raise two additional grounds for relief: first, that his trial and appellate counsel were ineffective for failing to argue that 21 U.S.C. § 848(e)(1)(A) applies only to substantive drug offenses punishable under § 841(b)(1)(A), and not drug conspiracies so punishable, (Crim. Doc. 92, at 2–6), and second, that his trial and appellate counsel were ineffective for failing to challenge the jury instructions regarding the nexus between the drug conspiracy and the murders, (*id.* at 6–16).

Neither of these arguments relate back to the claims brought in his Initial § 2255 Petition or Supplemental § 2255 Petition. While all three arguments raise the issue of Gonzalez's trial counsel being ineffective, "it is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion." *Ozsusamlar*, 2013 WL 4623648, at *4 (quoting *Veal v. United States*, No. 01 Civ. 8033(SCR), 2007 WL 3146925, at *4 (S.D.N.Y. Oct. 9, 2007)). Because these arguments involve entirely new questions of statutory interpretation, and differ in "both time and type" from the earlier claims, relation back is not permitted. *See Mayle*, 545 U.S. at 657.

## III.    Conclusion

For the foregoing reasons, Gonzalez's Supplemental § 2255 Petition, (Crim. Doc. 86), is accepted as timely.  Gonzalez's Relation Back Amendment, (Crim. Doc. 92), is denied as untimely.  Pursuant to my prior order, (Crim. Dkt. Entry July 8, 2016), the Government's substantive response is due forty-five (45) days from the date of this Opinion & Order.  The Government should address Gonzalez's motions for discovery, (Crim. Docs. 97, 98, 101), in its substantive response.  The merits briefing will be referred to a magistrate judge for a Report & Recommendation.

The Clerk of Court is respectfully directed to terminate the pending motions, (Crim. Docs. 85, 87; Civ. Docs. 6, 9), and mail a copy of this order to the pro se Petitioner at his most recent address.

SO ORDERED.

Dated: October 17, 2018
       New York, New York

Vernon S. Broderick
United States District Judge